[Crim. No. 6369.   Second Dist., Div. Three.   Dec. 23, 1958.]

THE PEOPLE, Respondent, v. GERALD DENNIS
O'HERRIGAN, Appellant.

Oliver L. Linck, Jr., for Appellant.

Edmund G. Brown, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

SHINN, P. J.—In a jury trial O'Herrigan was convicted of four offenses of violation of section 337a, Penal Code, namely subdivision I (bookmaking), subdivision II (occupancy of residence for the purpose of bookmaking), subdivision IV (recording a bet or bets) and subdivision VI (accepting a bet or bets). He made a motion for a new trial which was denied and he appeals from the judgment and the order. The sole contention on the appeal is that the evidence was legally insufficient to justify the verdicts.

Since we must accept that view of the evidence which tends to support the verdicts, even though it be contradicted by evidence favorable to the defendant, the jury was required to draw reasonable inferences from the following facts: At premises numbered 11432 Elliott Avenue in El Monte there is

a cottage; nearby are the Mainger Bar and a grocery; outside the grocery is a telephone in a booth; Officer Ray parked on Elliott in sight of the booth; on the first occasion he saw defendant come from the bar and go to the telephone, take the receiver off the hook, take a piece of paper from a hip pocket and then leave. Defendant repeated this operation two or three times at intervals of about 20 minutes. Defendant was not seen to dial the phone at any time. A few days later Ray observed defendant in similar activities. In this interval several persons drove up, parked, and entered premises 11432, remaining only a few minutes. On two occasions a few days later Ray observed defendant going through the same procedure; altogether he saw defendant using the telephone in the same manner eight or nine times and another officer, Barker, watched the phone booth on several days after the surveillance by Ray. Numerous people came to the residence, staying only a few minutes; on three occasions defendant went to the phone booth, apparently for a call, and never called out. On each occasion, he would take a paper from a hip pocket. On one occasion a woman approached defendant, handed him what appeared to be currency and received from defendant a white paper. The two officers saw another man enter the cottage and in a few minutes defendant went again to the phone, picked up the receiver without dialing and removed a piece of paper from his pocket. After defendant had returned to the cottage, the officers approached it and looked through a window. Defendant was seated at a small table in the kitchen, in front of him was another man who had a scratch sheet (National Daily Reporter) in front of him; the man said "Give me 2 and 2 parley on Frozen Assets in the second and Marianne in the fourth," at the same time handing defendant some currency. The officers saw defendant writing something on a little "spiral" notebook. Soon thereafter defendant left the cottage and was arrested by the officers. In the cottage the officers found the scratch sheet and the racing section of a local newspaper of that day with pen notations in the upper left hand corner. Notations were also observed on the scratch sheet and another copy was taken from defendant's pocket. On the notebook was the date and in the waste basket in a paper sack were torn fragments of paper. Pasted together they bore notations "1-2-10," "1-4-3" and "2-2." The first two were identified by the officers as indicating a race track, the number of the race and the number of the horse; the "2-2" was identified as indicating a "2 and 2

parley." These same figures appeared as an impression on the paper in the spiral notebook from which the torn fragments had been taken. There was evidence that "Frozen Assets" was a horse running in the second race at Golden Gate and "Marianne" was a horse running in the fourth race on that day. The officers found another writing which in their opinion indicated that there was due to "Bill" $14.15. The officers took from defendant's person $241.59. Defendant testified that he was by occupation a bartender, at times helped out at the Mainger Bar and he denied specifically having engaged in any bookmaking activities; the numerous persons who visited the house were friends who dropped by for brief visits. He was out of work at the time of his arrest but had no explanation of his possession of the money that was found on his person.

The brief on the appeal is merely an attempt to reconcile the facts established by the evidence with the innocence of the defendant. It fails to dissipate the reasonable inferences which pointed to defendant's guilt. There is no need for us to elaborate upon them. The actions of defendant were characteristic of the activities of small-time bookmakers. Instead of using a telephone in the premises, defendant received calls at intervals of about 20 minutes, and although these activities might have been innocent, they did not stand alone. The testimony of the officers that defendant accepted a bet with money to cover it and made a notation thereof on the leaf of a notebook established to the exclusion of any other reasonable explanation that defendant was engaged in actions which constituted violations of law as charged in the information. We need only say that in view of the evidence we have related a reversal of the judgment would be without precedent.

The judgment and the order denying motion for new trial are affirmed.

Wood (Parker), J., and Vallée, J., concurred.